## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## FILE NO. 3:20-CV-626

| | | |
|---|---|---|
| JUAN PABLO GIRON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | **(DEMAND FOR JURY TRIAL)** |
| SQUARE A CONSTRUCTION, INC., | ) | |
| ANGEL ROMO, AND ARNULFO | ) | |
| SANCHEZ, | ) | |
| | ) | |
| Defendants. | ) | |

This action is brought on behalf of Juan Pablo Giron, (hereinafter "Plaintiff") on behalf of himself and all other similarly-situated workers against their former or current employer, Square A Construction, Inc (hereinafter "Square A"), Angel Romo, and Arnulfo Sanchez (collectively, the "Defendants"). In support of his Complaint, the Plaintiff states and alleges as follows:

### NATURE OF THE ACTION

1.      This class/collective action case arises out of Defendants' systemic and unlawful treatment of the Plaintiff and other similarly situated current and former workers who were or are presently employed by the Defendants. The Plaintiff alleges that he and other workers; (i) are entitled to unpaid wages and prejudgment interest from the Defendants for overtime work performed for which they did not receive any overtime premium pay as required by the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA"), (ii) were misclassified as exempt from the overtime protections of the FLSA and were paid with a Form 1099, rather than a Form W-2, and incurred additional expenses and lost benefits as a result, and (iii) are entitled to liquidated damages and other appropriate relief pursuant to the FLSA and NCWHA.

Case 3:20-cv-00626-RJC-DSC   Document 1   Filed 11/09/20   Page 1 of 18

2. Additionally, Plaintiff suffered unlawful retaliation and discrimination when Defendants terminated him shortly after he made an internal complaint to Chief Operating Officer, Angel Romo, regarding the Defendants' decision to pay him with a Form 1099 rather than a Form W-2 and the Defendants' failure to pay the Plaintiff time-and-a-half for overtime worked. As a result, Plaintiff is entitled to compensatory damages in the form of front and back pay with prejudgment interest, an award of treble damages pursuant to the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-25.22(a), reasonable attorneys' fees and costs, and other appropriate relief.

## THE PARTIES

3. The Plaintiff and all other similarly situated workers are current or former employees of the Defendants, as defined by 28 U.S.C. § 203(e), N.C. Gen Stat. § 95-25.4, and North Carolina State Law. Plaintiff and all other similarly situated workers are current and former hourly laborers who were employed by Defendant Square A to work on various construction projects owned by the Defendant, and Plaintiff brings this action on behalf of himself and all other current and former laborers who are hourly, non-exempt employees of Square A within the state of North Carolina.

4. Plaintiff Juan Pablo Giron is a citizen of North Carolina who maintains his residence or domicile in Midland, North Carolina.

5. Plaintiff was employed by Defendants from March 23, 2016 to September 22, 2019.

6. Defendant Square A is a corporation organized under the laws of the State of North Carolina with its principal place of business in Charlotte, North Carolina.

7. At all relevant times, Defendant Square A has continuously been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning

of the FLSA, 29 U.S.C. §§ 203(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of more than $500,000.

8.     Defendant Angel Romo (hereinafter "Romo") is an individual and a North Carolina citizen. Upon information and belief, Defendant Romo maintains his principal residence in Mecklenburg County, North Carolina. Defendant Romo is a co-owner of Square A Construction, Inc. and currently acts as the Chief Operating Officer of Defendant Square A.

9.     Defendant Arnulfo Sanchez (hereinafter "Sanchez") is an individual and a North Carolina citizen. Upon information and belief, Defendant Sanchez maintains his principal residence in Union County, North Carolina. Defendant Romo is a co-owner of Square A Construction, Inc. and currently acts as the President of Defendant Square A.

10.     At all times relevant to this action, Defendants Romo and Sanchez had the authority to direct, control, and/or supervise the work of Plaintiff and all other workers and were employers of Plaintiff and all other workers within the meaning of 29 U.S.C. §§ 203(d) and (g), 29 C.F.R. § 791.2, and N.C. Gen. Stat. §§ 95-25.2(3) and (5).

11.     At all times relevant to this action, Defendants Romo and Sanchez set the terms, conditions, and privileges of Plaintiff and all other similarly-situated workers' employment, including the amount and timing of wage payments

12.     At all times relevant to this action, Plaintiff and all other similarly-situated workers were employed by Defendants within the meaning of 29 U.S.C. §§ 203(e)(1) and (g), 29 C.F.R. § 791.2, and N.C. Gen. Stat. §§ 95-25.2(3) and (4).

## JURISDICTION AND VENUE

13.    This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343, because they arise under the laws of the United States.

14.    This Court has supplemental jurisdiction over Plaintiff's claims arising under the NCWHA and Retaliatory Employment Discrimination Act ("REDA") and Plaintiff's claim for Wrongful Discharge in Violation of North Carolina Public Policy under 28 U.S.C. § 1367 because the State law claims arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

15.    Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)-(c), because Defendant Square A maintains offices in this District, and conducts business in this District. Defendants Romo and Sanchez are residents and citizens in this District. A substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District, the alleged unlawful employment practices were committed in this District, and employment records relevant to those practices are maintained and administered in this District.

16.    The Western District of North Carolina has personal jurisdiction over Defendant Square A because it maintains offices in this District, conducts business in this District, and because the acts complained of and giving rise to the claims alleged herein occurred in this District.

17.    The United States District Court for the Western District of North Carolina has personal jurisdiction over Defendants Romo and Sanchez because they are citizens and residents of respectively Mecklenburg and Union County, North Carolina and because the acts and omissions of which the Plaintiff complains occurred within Mecklenburg County, North Carolina.

4

18.     Plaintiff has exhausted his administrative remedies and complied with all statutory prerequisites to his REDA claims.

## FACTUAL ALLEGATIONS

**A.     Plaintiff's Employment History with Defendant Square A.**

19.     Plaintiff is an experienced commercial truck driver with a valid North Carolina Commercial Driver License ("CDL").

20.     Plaintiff joined Square A Construction, Inc. as a truck driver on or about March 23, 2016.

21.     When Plaintiff began his employment with the Defendants, Plaintiff was initially offered an hourly rate of $15.00 per hour.

22.     Plaintiff received several raises in his hourly rate between 2016 and his termination in December 2019.  On the date of Plaintiff's termination in December of 2019, Plaintiff's hourly rate was $20.00 per hour.

**B.     Square A's Misclassification of the Plaintiff**

23.     The Plaintiff did not have a written contract with the Defendants, and at all times, the Plaintiff and Defendants maintained an at-will employment relationship.

24.     During the Plaintiff's entire employment with the Defendants, the Plaintiff was improperly classified as an independent contractor and paid via Form 1099.

25.     As a truck driver for the Defendants, the Plaintiff drove a truck owned by said Defendants and hauled loads to and from construction sites determined by the Defendants according to needs established by the Defendants in its sole discretion.

26.     Defendants furnished all tools and equipment the Plaintiff needed to perform his job.

27.     When employed by Defendants, the Plaintiff had no autonomy or ability to decide his working conditions or schedule.

28.     As a result of Defendants providing the Plaintiff with a Form 1099 instead of Form W-2 each year, the Plaintiff was responsible for Defendant Square A's portion of Social Security and Medicare taxes each year of Plaintiff's employment.

**C.     Square A's Failure to Pay the Plaintiff Time-And-A-Half for Overtime Worked**

29.     On average, the Plaintiff worked between 65 and 80 hours per week.

30.     For all hours that the Plaintiff worked in excess of forty (40) hours per workweek, Defendants only paid the Plaintiff for straight time and not time-and-a-half for all overtime worked.

31.     The Plaintiff kept careful records of his hours worked each day and emailed his hours worked to an accountant employed by Defendants each Wednesday.

32.     A comparison of the Plaintiff's time records, and his paystubs reflect that the Plaintiff was not paid for 3,420 hours of overtime worked between January 1, 2017 and the present.

**D.     Square A's Misclassification and Failure to Pay Time-And-A Half for Similarly-Situated Workers**

33.     During most of the Plaintiff's employment, he regularly interacted with approximately 15 to 20 individuals who were also employed by Defendants as hourly workers pursuant to IRS Form 1099 to work on and assist with construction projects on a permanent basis.

34.     The Plaintiff also regularly interacted with approximately 20 to 40 other workers hired by Defendants to perform bricklaying, framing and concrete work on its various projects.

35.     Because Defendant Square A was a small company, Plaintiff and all of the other hourly workers were supervised by and reported directly to Defendant Romo. Plaintiff and the other hourly workers are similarly-situated, in that they worked on the same job sites performing

similar construction-related jobs for the same supervisors for an hourly wage set by the Defendants.

36.     These aforementioned workers informed the Plaintiff that they were classified as independent contractors and paid via a Form 1099, rather than a Form W-2.

37.     These same workers also told the Plaintiff that they were only being paid straight time instead of time-and-a-half for their work performed over forty (40) hours per work week.

**E.     The Plaintiff's Complains to Square A regarding his Overtime and Misclassification**

38.     Plaintiff verbally complained about his misclassification and the lack of proper overtime pay periodically during his employment to Defendant Romo.

39.     When Plaintiff made his complaints, Defendant Romo repeatedly attempted to placate Plaintiff with statements and promises that the Company would pay the Plaintiff overtime wages owed.

40.     In early December 2019, in the presence of Defendant Sanchez, the Plaintiff again complained to Defendant Romo regarding his misclassification and Square A's failure to pay him time-and-a-half for overtime.

41.     During the conversation, Defendant Romo became visibly angry and emphatic about the fact that the Plaintiff had continued to make complaints to him regarding the Plaintiff's misclassification and improper pay for overtime. Defendant Romo emphatically told the Plaintiff that he would never pay him the time and half that the Defendants owed the Plaintiff.

42.     On December 16, 2019, the Plaintiff received a text message from Defendant Romo informing the Plaintiff that his employment relationship with the Defendants had been terminated.

43. When the Plaintiff received the notice of termination, he was the only CDL truck driver employed by the Defendants, and, therefore, the only person licensed to drive the Defendants' trucks that moved materials from Defendant's warehouse to its construction sites.

44. Upon information and belief, Defendant Square A cannot run its business legally without an employee/truck driver with a commercial driver's license (herein "CDL").

45. Plaintiff was terminated because he lodged complaints about Defendants' failure to pay the Plaintiff the overtime wages he was owed and for the costs the Plaintiff incurred due to the Defendants' misclassification of the Plaintiff.

46. On June 4, 2020, the Plaintiff filed an Employment Discrimination Complaint Form with the North Carolina Department of Labor ("NC DOL") alleging that Defendants terminated the Plaintiff in retaliation for his complaints regarding Defendants pay practices, which were in violation of the NCWHA and FLSA, attached and incorporated herein as Exhibit 1.

47. On September 4, 2020, the NC DOL issued the Plaintiff a Right-To-Sue letter, attached and incorporated herein as Exhibit 2.

48. This action was filed and initiated within ninety (90) days of the issuance of said Right-To-Sue letter.

## FLSA Collective Action Allegations

**A.    Overtime Collective Action**

49. The named Plaintiff seeks to bring his claim under the Fair Labor Standards Act as a collective action on behalf of himself and all other similarly situated hourly employees of the Defendants who were required to work in excess of forty (40) hours per week for a flat hourly rate, rather than time-and-a-half, and who timely file (or have already filed) a written consent to be a

8

party to this action pursuant to 29 U.S.C. § 216(b) ("Overtime Collective Action"). They seek unpaid overtime wages and liquidated damages.

50. Plaintiff and members of the Overtime Collective Action are similarly situated: they are all non-supervisory hourly employees who worked for Defendants between November 6, 2016 and November 6, 2020 and were not compensated at one and one half times their regular rate of pay for overtime.

**B. Misclassification Collective Action**

51. The named Plaintiff seeks to bring his claim under the Fair Labor Standards Act as a collective action on behalf of himself and all other similarly situated employees of the Defendants who were misclassified as independent contractors and paid with a Form 1099, rather than a Form W-2, and who timely file (or have already filed) a written consent to be a party to this action pursuant to 29 U.S.C. § 216(b) ("Misclassification Collective Action"). They seek reimbursement for expenses incurred as a result of their misclassification including, *inter alia*, loss of benefits, loss of tax contributions, and unemployment payments.

52. Plaintiff and members of the Misclassification Collective Action are similarly situated: they are all non-supervisory hourly workers paid with a Form 1099 who worked for Defendants between November 6, 2016 and November 6, 2020 and were employed under the FLSA but were wrongly classified as independent contractor by the Defendants.

<u>**NCWHA Class Action Allegations**</u>

53. Plaintiff seeks to represent a class of persons under N.C. R. Civ. P. Rule 23, N.C. Gen. Stat. § 1A-1, for back wages and liquated damages under N.C. Gen. Stat. §§ 95-25.4, 95-25.6 and 95-25.7 ("NCWHA Class"). The NCWHA Class consists of all non-supervisory workers who were employed by the Defendants to perform work on its construction projects in any pay period

falling within two chronological years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered in this action and who did not receive: (1) time and a half for all hours worked in excess of 40 hours in one work week; or (2) did not receive all accrued wages on any regularly-scheduled payday, in violation of N.C. Gen. Stat. §§ 95-25.6 and 95-25.7.

54.     The NCWHA Class is so numerous and so geographically dispersed as to make joinder impractical. Upon information and belief, the class includes over 60 individuals. Many of the members in this class are not fluent in English and are unfamiliar with the American judicial system. The relatively small size of the individual claims and the indigence of certain members of this class make the maintenance of separate actions by each members of this class not feasible.

55.     The question of law or fact which is common to the members of the NCWHA Class and which predominate over any other questions affecting only individual members of the class under N.C. R. Civ. P., Rule 23, is whether Defendants failed to compensate putative NC Class Members at the earned, accrued and/or promised rate for all hours worked.

56.     The claims of the Plaintiff are typical of the claims of the NCWHA Class under N.C. R. Civ. P., Rule 23 and those typical claims predominate over any questions affecting only individual class members.

57.     A class action under Rule 23 is superior to other available methods of adjudicating this controversy because the common issues of law and fact, as well as the relatively small size of the individual claims of each member of the classes, substantially diminish the interest of members of the classes in individually controlling the prosecution of separate actions. Plaintiff's interests in the claims are in no way antagonistic or adverse to those of other class members.

58.     Plaintiff will fairly and adequately represent the interests of the NCWHA Class defined in 53 above.

59.     The Noble Law Firm, PLLC will act as undersigned counsel. The attorneys at The Noble Law Firm are experienced litigators, who have been counsel in many cases involving similar claims to those raised in this action and represented parties in other class and/or collective action cases.

## COUNT 1
## VIOLATION OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 201, ET SEQ. (OVERTIME)
## BROUGHT BY PLAINTIFFS ON BEHALF OF THEMSELVES AND ALL SIMILARLY-SITUATED EMPLOYEES

60.     The named Plaintiff and members of the FLSA collective action described in ¶ 49, which Plaintiff seeks to represent pursuant to 29 U.S.C. § 216(b), repeats, reiterates, and realleges paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61.     At all relevant times, Defendants Square A, Romo, and Sanchez were the Plaintiff's and the members of the Overtime Collective Action's "employer" as defined in 29 U.S.C. § 203(d).

62.     Defendants willfully failed to pay Plaintiff and the members of the Overtime Collective Action at least one and one-half times the regular rate of pay for each hour worked over forty (40) in a single workweek, in violation of 29 U.S.C. § 207(a)(1).

63.     The overtime violation described in ¶ 62 occurred because Defendants paid the Plaintiff and members of the Overtime Collective Action straight pay at a flat hourly wage without paying them the required premium for overtime hours.

64.     Upon information and belief, Defendants knew or showed reckless disregard as to whether their conduct was prohibited by the Fair Labor Standards Act and its accompanying regulations.

65.     As a result of Defendants' actions, Plaintiff and members of the Overtime Collective Action suffered damages in the form of unpaid overtime damages and liquidated damages.

## COUNT 2
### VIOLATION OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 201, ET SEQ. (MISCLASSIFICATION)
### BROUGHT BY PLAINTIFFS ON BEHALF OF HIMSELF AND ALL SIMILARLY-SITUATED EMPLOYEES

66.     The named Plaintiff and members of the FLSA collective action described in ¶ 51, which he seeks to represent pursuant to 29 U.S.C. § 216(b), repeats, reiterates, and realleges paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67.     At all relevant times, Defendants Square A, Romo, and Sanchez were the Plaintiff and members of the Misclassification Collective Action "employer" as defined in 29 U.S.C. § 203(d).

68.     Plaintiff and the members of the Misclassification Collective Action are non-exempt covered employees within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

69.     During the relevant period, Defendants maintained a policy and practice of misclassifying its workers, including the Plaintiff and the members of the Misclassification Collective Action, as exempt under the FLSA.

70.     Defendants willfully paid Plaintiff and the members of the Misclassification Collective Action with a Form 1099 rather than a Form W-2.

71.     By paying the Plaintiff and the other members of the Misclassification Collective Action with a Form 1099, rather than a Form W-2, Defendants avoided paying Defendant Square A's portion of Social Security and Medicare taxes each year of the Plaintiff's and members of the Misclassification Collective Action's employment.

72.     As a result of Defendant's misclassification of its workers, the Plaintiff and the Misclassification Collective Action incurred additional costs and lost benefits as a result of Defendants' actions. The Plaintiff and the members of the Misclassification Collective Action are entitled to liquidated damages and attorney fees and cost incurred in connection with this claim.

**COUNT 3**
**VIOLATION OF THE NORTH CAROLINA WAGE AND HOUR ACT N.C. GEN. STAT.**
**§ 95-25.1, ET SEQ.**
**BROUGHT BY PLAINTIFF ON BEHALF OF HIMSELF AND ALL SIMILARLY-**
**SITUATED EMPLOYEES**

73.     The named Plaintiff, on behalf of himself and members of the NCWHA Class described in ¶ 53, repeats, reiterates, and realleges paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74.     At all relevant times, Defendants Square A, Romo, and Sanchez were "employers" within the meaning of N.C. Gen. Stat. § 95-25.2 (5) with respect to Plaintiff and the members of the NCWHA Class.

75.     At all times relevant to the action, Defendants were covered by the overtime mandates of the NCWHA, N.C. Gen. Stat. § 95-25.4, and the so-called "Payday" provisions of the NCWHA, N.C. Gen. Stat. §§ 95-25.6 and 95-25.7, and the Plaintiff and members of the NCWHA Class were employees entitled to the NCWHA's protections.

76.     The NCWHA entitles employees to compensation for every hour worked in a workweek. *See* N.C. Gen. Stat. § 95-25.3.

77.      The NCWHA entitles employees to overtime compensation "not less than time and one-half of the regular rate of pay of the employee for those hours in excess of 40 hours per week." *See* N.C. Gen. Stat. § 95-25.4.

78.     The NCWHA requires each employer to "pay every employee all wages and tips accruing to the employee on the regular payday," and requires an employer to pay an employee who is separated from his or her employment "all wages due on or before the next regular payday" following the separation.  *See* N.C. Gen. Stat. §§ 95-25.6 and 95-25.7.

79.     Defendants failed to pay Plaintiff and members of the NCWHA Class wages owed at one-and-a-half times their regular rate of pay for all hours worked in excess of forty hours in one workweek, in violation of N.C. Gen. Stat. §95-25.6, and failed to pay Plaintiff and members of the NCWHA Class all wages accruing to them on the regular paydays, in violation of N.C. Gen. Stat. §§ 95-25.6 and 95-25.7.

80.     The Plaintiff and members of the NCWHA Collective Action are entitled to recover, among other things, such wages that were due to them at the time of judgement, with pre-judgement interest from the date that they became due, plus liquidated damages pursuant to NC. Gen. Stat. § 95-25.22(a)(1)

### COUNT 4
### VIOLATION OF THE NORTH CAROLINA RETALIATORY EMPLOYMENT DISCRIMINATION ACT N.C. GEN. STAT. §§ 95-240, ET SEQ.
### BROUGHT BY PLAINTIFF

81.     Plaintiff repeats, reiterates and realleges paragraphs 1 through 80 of this Complaint as if fully set forth herein.

82.     The North Carolina Retaliatory Employment Discrimination Act ("REDA") makes it unlawful for any "person" to take any "retaliatory action" (including discharge from employment) because an employee has, in good faith, inquired or complained to an appropriate person regarding violations of the North Carolina Wage & Hour Act. N.C. Gen. Stat. §§ 95-240 & 241(a).

83.     Plaintiff engaged in activity protected under North Carolina Retaliatory Employment Discrimination Act when he complained of Defendants' pay practices, which were in violation of the NCWHA.

84.     Plaintiff complained to Defendant Romo about the Defendants' unlawful pay practices on numerous occasions, and most recently complained of the Defendants' failure to pay overtime owed in early December of 2019.

85.     Approximately two weeks after Plaintiff's most recent complaint, the Defendants terminated the Plaintiff's employment on December 16, 2019.

86.     Plaintiff was terminated because he engaged in activities protected by the REDA.

87.      As a result of Defendants' conduct, Plaintiff has suffered damages in the form of loss of wages and benefits and other economic losses, which Plaintiff seeks.

88.     On June 6, 2020, Plaintiff filed an Employment Discrimination Complaint Form with the North Carolina Department of Labor ("NC DOL") alleging that Defendant Square A terminated the Plaintiff in retaliation for his complaints regarding Defendant Square A's pay practices which were in violation of the NCWHA and FLSA.

89.     On September 15, 2020, the NC DOL issued the Plaintiff a Right-To-Sue letter.

90.     Plaintiff has exhausted his administrative remedies and fulfilled all procedural prerequisites for his statutory REDA claim.

91.     Defendants' conduct was willful, entitling Plaintiff to a trebling of his damages pursuant to the REDA, which Plaintiff seeks.

92.     Plaintiff also seeks costs and attorney's fees as provided by the REDA.

## COUNT 5
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
### (N.C. Gen. Stat. 143-422.1)

93.     Plaintiff repeats, reiterates and realleges paragraphs 1 through 92 of this Complaint as if fully set forth herein.

94.     Pursuant to the North Carolina Wage and Hour Act, "the wage levels of employees, hours of labor, payment of earned wages, and the well-being of minors are subjects of concern requiring legislation to promote the general welfare of the people of the State" and entitled to protection. N.C. Gen Stat. § 95-25.1

95.     Pursuant to the Retaliatory Employment Discrimination Act, a potential harm to the public is created that violates public policy if an employer is allowed to "discriminate or take retaliatory action against" an employee who in good faith makes a claim or complaint with respect to the protections guaranteed by the NCWHA. N.C. Gen. Stat. § 95-241(a).

96.     Plaintiff made repeated complaints in an attempt to address the Defendants continuous violations of the NCWHA's overtime pay and payday provisions. When Plaintiff complained again in early December of 2019, Defendant Romo became irate with the Plaintiff for his recent complaints.

97.     Less than two weeks after Plaintiff's latest complaint regarding violations of the NCWHA, the Defendants terminated the Plaintiff.

98.     As a direct and proximate result of these willful actions of Defendants in reckless disregard of the rights of the Plaintiff, the Plaintiff has suffered damages in the form of lost wages.

## COUNT 6
## UNJUST ENRICHMENT

99.     Plaintiff repeats, reiterates and realleges paragraphs 1 through 98 of this Complaint as if fully set forth herein.

100.    Plaintiff performed work faithfully for Defendants throughout his employment, and substantially benefitted Defendant Square A through his work.

101.    Plaintiff also timely filed his tax returns remitted to the IRS the employer's portion of Social Security and Medicare taxes, which were lawfully the responsibility of Defendant Square A.

102.    By paying taxes as an independent contractor, the Plaintiff conferred a benefit on Defendant Square A.

103.    Plaintiff had a reasonable expectation that Defendants would correct its misclassification of Plaintiff and return to him the employer's portion of Social Security and Medicare taxes.

104.    Plaintiff is entitled to reimbursement from Defendants for the Defendant Square A's taxes that the Plaintiff remitted on its behalf to the IRS.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

(a)    That he be afforded a jury trial on all issues triable to a jury;

(b)    Enter an order finding that this Court has jurisdiction over Plaintiff's claims;

(c)    Certify this action as a collective action under 29 U.S.C. § 216(b) with respect to the FLSA statutory classes defined in ¶¶ 49 and 51 of this Complaint;

(d)    Certify this action as a class action under Fed. R. of Civ. P. Rule23(b)(3) for damages under N.C. Gen. Stat. §§ 95-25.4 and 25.6 with respect to the NCWHA class defined in ¶ 53;

(e)    Enter judgement against the Defendants in favor of the named Plaintiff and all other similarly-situated employees of the Defendants for compensatory damages for

unpaid wages and improper withholdings, liquidated damages, and interest, as well as costs and attorney fees incurred in bringing this action in an amount to be determined by the trier of fact and as allowed by law, plus interest allowed by law, in an amount to be determined at trial;

(f)     Direct the Defendants to pay the Plaintiff back pay, front pay, and benefits and compensatory damages in an amount to be determined by the trier of fact and as allowed by law, plus interest allowed by law, in an amount to be determined at trial;

(g)     Award monetary damages as to Plaintiff's claim for unjust enrichment in an amount to be determined by the trier of fact and as allowed by law, plus interest allowed by law, in an amount to be determined at trial;

(h)     All costs of this action be taxed against the Defendants;

(i)     Direct the Defendants to pay Plaintiff treble damages pursuant to N.C. Gen. Stat. § 95-243(c).

(j)     Award Plaintiff his reasonable attorneys' fees and costs; and

(k)     Grant such other and further relief as the Court deems necessary and proper.


Respectfully submitted this the 9th day of November 2020.

**THE NOBLE LAW FIRM, PLLC**

/s/ *Laura L. Noble*
Laura L. Noble, Esq. (N.C. State Bar No. 38691)
141 Providence Road, Suite 210
Chapel Hill, NC 27514
Office: (919) 251-6008
Fax: (919) 869-2079
Email: lnoble@thenoblelaw.com

*Attorneys for Plaintiff*